1
2
3
4
5
6

**MELISSA C. NOLD, ESQ., SBN 301378**
**NOLD LAW**
**Russo Building**
521 Georgia Street
Vallejo, California 94590
Tel: (707)644-4004
Email: melissa@noldlaw.com

Attorney for Plaintiffs

7

## UNITED STATES DISTRICT COURT

8
9

## FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20

JAMAL COLTER, an individual;
KELLYANNE COLTER, an individual; and
ROBERT BAKER, an individual,

            Plaintiffs,

   v.

CITY OF VALLEJO, a municipal
corporation; JASON TA, in his official
capacity as CHIEF OF POLICE for the CITY
OF VALLEJO; JODI BROWN, in her
individual capacity as a law enforcement
officer for the CITY OF VALLEJO; and
DOES 1-25 in their individual capacity as
law enforcement officers for the CITY OF
VALLEJO, inclusive,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:25-cv-01104 AC

FIRST AMENDED COMPLAINT

21
22

## INTRODUCTION

23
24
25
26
27
28

1.    This bizarre and shocking case began on April 14, 2024, when Defendant Vallejo Police

Sergeant Jodi Brown went on an unconstitutional fishing expedition, after racially profiling an

African American man who was sitting in a parked car that was unilluminated and not running.

After declining to identify himself voluntarily, Sergeant Brown angrily demanded Plaintiff,

Robert Baker, provide an ID, so he handed her his California ID to diffuse the increasingly tense

and illegal detention. Sergeant Brown got increasingly upset, despite Mr. Baker's calm tone and full compliance with her unlawful detention. Sergeant Brown's neck started turning a bright flaming red, causing Mr. Baker to feel a pit in his stomach, as he was very familiar with Vallejo Police Department's notorious history of excessive force, racism, and hunting and abusing people of color for sport.

2.    Sergeant Brown accused Mr. Baker of driving without a license, then tried to place her personalized 14-carat gold plated handcuffs onto his wrist. Mr. Baker saw the strange gold bracelet, and fearing his imminent safety, instinctively started the car and drove away. Sergeant Brown did not pursue the subject of her nonconsensual, illegal, racial profiling detention, who she had never seen driving prior to him driving away in fear of her bad intentions.

3.    Three days later, on April 17, 2024, Sergeant Brown gathered up a group of yet-to-be-identified Defendant DOE Vallejo Police Officers and vindictively kicked in the door of the residence listed on Mr. Baker's ID, the home of his parents, Plaintiffs Jamal and Kellyanne Colter. Officers spent hours ransacking every square inch of the house and garage. Officers kicked in multiple doors and intentionally vandalized and destroyed the family's property, on top of towing their car.  Mr. and Mrs. Colter called the Vallejo Police Department and received a return phone call from Sergeant Jodi Brown herself, who claimed she had a 'burglary warrant' for Robert Baker, admitting she personally searched Plaintiffs house, with an alleged 'search warrant' authorizing the search of an entire multi-bedroom family home with unknown residents, to search for Sergeant Brown's gold handcuffs and **no other item**. Plaintiffs later discovered Vallejo Police Officers came to their neighborhood the day prior, intimidated their neighbors and demanded information about them.

4.    The retaliation escalated to violence on May 3, 2024, when a yet-to-be-identified

Defendant DOE Vallejo Police Officer saw Mr. Baker on a motorbike and intentionally swerved into him and ran him off the road, causing Mr. Baker to crash and break his leg, an injury which required surgery. Then, on May 18, 2024, Mr. and Mrs. Colter and their minor children were stopped by a dozen officers with AR-15 rifles in San Franciso after driving the car involved in the incident with Sergeant Brown on April 14, 2024. Officers told the family the car was flagged in the system as being involved in a 'robbery' and tagged 'armed and dangerous.' The car was seized and towed. No charges have ever been filed against Mr. Baker.

5.   The family filed a timely Government Tort Claim with the City of Vallejo, which included a Cease-and-Desist demand to curb additional retaliation and violence, and requested an Internal Affairs investigation into these escalating incidents. Six months later, and the Vallejo Police Department has not investigated this incident and has not responded to Plaintiffs inquiries, despite the family's demand and willingness. Instead of looking into the incident, the Vallejo Police Department promoted Brown to Lieutenant.

6.   Plaintiffs bring forth claims for damages as a result of the violation of their constitutional rights under 42 U.S.C.§ 1983, as a result of violations of the Fourth Amendment rights to be free from excessive force and illegal search and seizure, and state law causes of action.

7.   Plaintiffs also present a *Monell* cause of action against the City of Vallejo for its ongoing, open and notorious, decades long pattern and practice of hiring unqualified, violent cowboys, and then refusing to supervise and control these known rogue employees, while simultaneously concealing officer misconduct from civil plaintiffs and criminal defendants for decades, in violation of state and federal law. The City of Vallejo's own long hidden records and multiple whistleblowers demonstrate the City of Vallejo's long-standing pattern of malicious and

calculated efforts to conceal their ongoing violations of state and federal laws, to obstruct the

justice of civil plaintiffs and criminal defendants, and to prevent meaningful reform. In addition,

City of Vallejo goons have now threatened, stalked and terminated three high ranking

whistleblowers who sought to reform the Vallejo Police Department and expose the issues

described herein, Chief Shawny Williams, Deputy Chief Joseph Gomez, and Captain John

Whitney, and concealed it from the California Department of Justice, further thumbing its nose at

the unsupervised Stipulated Agreement intended to address these issues.

8.   The City of Vallejo Police Department does not have the proverbial few bad apples.

Quite the contrary, from the deepest roots leading up into every branch, the tree is completely

emersed in festering, irreparable, conscience shocking racism, corruption and rot, from the City

Attorney's Office to the Vallejo Police Department command staff dating back decades, down to

the yet to be unburied secrets within the Vallejo Police Department. The Vallejo Police

Department and City of Vallejo have proven their unabashed unwillingness and inability to

protect the constitutional rights of the people who live in and visit the City of Vallejo and refuse

to comply with the directives of the Department of Justice. Neither the City of Vallejo nor the

Vallejo Police Department should be permitted to operate outside of the direct supervision of the

Eastern District Federal Court until such a time the City of Vallejo AND the Vallejo Police

Department can rehabilitate to the satisfaction of the Court and the community of Vallejo.

**VENUE**

9.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are

believed to reside in this district, and all incidents, events, and occurrences giving rise to this

action occurred in this district.

**JURISDICTION**

10. This action arises under Title 42 of the United States Code, § 1983. Title 28 of the United States Code, §§ 1331 and 1343, confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in the City of Vallejo, California, which is within the judicial district of this Court.

11. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the state law claims, which are related to federal claims in this action in that they form part of the same case or controversy under Article III of the Constitution of the United States.

**PARTIES**

12. Plaintiff JAMAL COLTER ("PLAINTIFF") is a competent adult, and a California resident.

13. Plaintiff KELLYANNE COLTER ("PLAINTIFF") is a competent adult, and a California resident.

14. Plaintiff ROBERT BAKER ("PLAINTIFF") is a competent adult, and a California resident.

15. Defendant CITY OF VALLEJO (hereinafter, "CITY") is a municipal corporation, duly authorized to operate under the laws of the State of California.  Under its supervision, the CITY OF VALLEJO manages and operates the VALLEJO POLICE DEPARTMENT ("VPD"). The CITY OF VALLEJO maintains respondeat superior liability for the actions of its employees.

16.  Defendant OFFICER JASON TA ("DEFENDANT TA") is and at all relevant times was the Chief of Police for the VPD. CHIEF JASON TA is and at all relevant times was the Chief of Police for the VPD and is being sued in his official capacity.

17. Defendant OFFICER JODI BROWN ("DEFENDANT BROWN") was, and at all times mentioned herein, is a police command staff member for the City of Vallejo and is sued in her individual capacity as a Vallejo Police Supervisor. On the date of the incident, Jodi Brown was a Police Sergeant. Jodi Brown was promoted to Police Lieutenant subsequent to the subject incident.

18. Plaintiffs are ignorant of the true names and/or capacities of Defendant sued herein as DOES 1-25, inclusive, and therefore sues said defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs believe and allege that each of the D.O.E. defendants are legally responsible and liable for the incident, injuries, and damages hereinafter set forth. Each Defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, and violation of public policy. Each Defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon the agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiffs will ask leave to amend this Complaint subject to further discovery.

19. In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment for the Defendant Vallejo Police Department.

20. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

21. Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

## ADMINISTRATIVE PREREQUISITES

22. Plaintiffs are required to comply with administrative requirements under California law, which require Government Tort Claims to be filed within six months of the incident.

23. The first in the series of incidents outlined in this Complaint occurred on April 14, 2024. Therefore, Plaintiffs Claim was due on or before October 14, 2024, which fell on Indigenous People's Day and/or Columbus Day, both a state and federal holiday.

24. The Vallejo City Clerk's Office was in fact closed on October 14, 2024, in observance of Indigenous People's Day, and/or Columbus Day.

25. On October 14, 2024, Plaintiffs emailed a courtesy copy of their Government Tort Claim to the Vallejo City Clerk.

26. On October 15, 2024, the next business day, Plaintiffs submitted a physical copy of the Claim and received a date stamped copy of the Claim.

27. On October 24, 2024, the City of Vallejo's Claims Adjuster Rose Mary Jimenez, of Sedgwick, erroneously sent Plaintiffs a 'Notice of Non-consideration of Claim Due to Untimely Presentation' while acknowledging the Claim was indeed received on October 15, 2024.

28. On November 12, 2024, Counsel emailed Ms. Jimenez and explained that a Claim is considered timely filed if delivered the next business day, if the due date falls on a holiday or weekend, a longstanding rule of civil procedure in California.

29. On November 15, 2024, Ms. Jimenez sent Plaintiffs a letter stating the City of Vallejo would not correct the error and continued to deny the timely filing of the April 14th portion of the incident. The letter stated that the April 17, May 3, and May 18th incidents were being investigated. Counsel cc'd the Vallejo City Attorney in correspondence with Ms. Jimenez, in

hopes of getting the issue resolved by someone with a working familiarity with the law. Apparently, civil procedure confounded the City Attorney as well, as the error went uncorrected.

30. The City of Vallejo never sent any additional correspondence related to the incidents on April 17, May 3, or May 18, which have not been acted upon to date.

31. Plaintiffs have exhausted all administrative remedies pursuant to California Government Code Section 910, as the City of Vallejo was provided timely and proper notice on October 15, 2024.

## FACTUAL ALLEGATIONS

**Subject Incident**

32. On Sunday April 14, 2024, at approximately 5:00 p.m., Plaintiff Mr. Robert Baker was sitting in a car that was legally parked at the curb, in a residential neighborhood adjacent to Redwood Street, in Vallejo. The car was not running or illuminated.

33. A few minutes later, a yet-to-be-identified Vallejo Police Officer drove past Mr. Baker on the opposite side of the two-lane street and waved at Mr. Baker. Mr. Baker waved back to acknowledge the officer.

34. Minutes later, Defendant Vallejo Police Sergeant Jodi Brown walked up the car and asked Mr. Baker, "What are you doing?" Mr. Baker told her he was 'waiting for someone.' A yet-to-be-identified male Vallejo Police Officer stopped to inquire why Sergeant Brown was bothering Mr. Baker.

35. Sergeant Brown asked Mr. Baker for his ID. Mr. Baker asked her why she needed his \ ID, since he was just sitting in a parked car. Mr. Baker was not doing anything illegal, was not the subject of any investigation, and was not required to identify himself at that point.

36. Then, with a scowl at his refusal to voluntarily relinquish his constitutional rights, Sergeant Brown escalated the incident, increased her volume and demanded Mr. Baker's ID.

37. Mr. Baker provided Sergeant Brown with his ID to avoid further escalation or force, and Sergeant Brown walked away.

38. Sergeant Brown came back to the car and suddenly grabbed Mr. Baker's arm. She started to place a shiny gold metal object on his arm, while stating that she was going to detain him because he did not have a Driver License. Mr. Baker did not drive in the presence of Sergeant Brown and was not observed driving by any member of any law enforcement agency prior to her arrival.

39. Sergeant Brown's conduct and the strange gold bracelet startled Mr. Baker, who grew increasingly concerned about his physical safety, having heard about Vallejo Police Officers unlawfully targeting people of color and engaging in rituals surrounding the shooting deaths of African American and Latino men. Sergeant Brown's neck and face went from white to an angry flaming red, prompting Mr. Baker to fear that she was going to harm him.

40. Mr. Baker grabbed the car keys, started up the car and drove away in fear for his life, with the strange gold bracelet partially wrapped around his wrist, shaking it off as he drove down the road.

41. Mr. Baker returned home without incident, following all traffic laws. Sergeant Brown did not follow him. Upon information and belief, Sergeant Brown did not pursue Mr. Brown because she did not have a lawful basis to compel identification or detain Mr. Baker after he initially declined to identify himself.

42. Sergeant Brown was still in possession of Mr. Baker's ID, which listed his address, 106 Assay Court, Vallejo, Ca.

43. Two days later, on April 16, 2024, Vallejo Police Officers **first** came to the home of Plaintiffs Jamal Colter, Kellyanne Colter, and their son Robert Baker, at 106 Assay Court, in Vallejo.

44. On that day, yet-to-be-identified Vallejo Police Officers interrogated Plaintiffs' elderly neighbors, demanding to who know who lived at 106 Assay Court and who comes in and out. The neighbors were intimidated and told the police they did not know.

45. The Vallejo Police Officers knocked on the door of 106 Assay Court and when nobody answered they left. The family was in the process of moving and did not return to the house that day.

46. The next day, April 17 2024, around 5:00 p.m., neighbors heard loud and intense banging coming from 106 Assay Court. When the neighbors went out to see what was going on, they saw multiple yet-to-be-identified Defendant DOE Vallejo Police Officers breaking into the residence.

47. There were Vallejo Police Officers in the street, house, garage, backyard and on the hill above the house. The patrol cars blocked neighbors' driveways for several hours, spending dozens of man hours in a resource strapped department tramping on the constitution and violating every fundamental principle of trust that is necessary to operate a constitutionally sufficient law enforcement agency. There were at least six police cars and more than a dozen officers on site ransacking the house and frightening the neighbors for several hours, while they vindictively crushed, destroyed, and vandalized the family's belongings looking for Jodi Brown's golden handcuffs.

48. That evening, Plaintiff Jamal Colter got a call from a neighbor, informing him of the break in.

49. On April 18, 2024, Mr. Jamal Colter and Mrs. Kelly Anne Colter got to the property and discovered their daughter's car had been towed away. Plaintiffs side yard gate was kicked open and there were broken pieces of wood around the front door and garage door, which were boarded up with plywood.

50. The house was inaccessible because the City's repair crew used specialty screws to secure the plywood to the house, but the family could squint through the windows and see their boxed personal items and loose belongings crushed, dumped out and tossed all around the home, with broken items and glass everywhere.

51. Mr. Colter immediately called the non-emergency number for the Vallejo Police Department and left a message asking for the Watch Commander to call back.

52. Later that day, Mr. Colter received a call from a female saying she was returning the call for the Watch Commander. The caller refused to identify herself by name, but as she continued talking, it became apparent the caller was Defendant Sergeant Jodi Brown. Sergeant Brown kept asking Mr. Colter where Robert Baker was and where he lives. Mr. Colter asked several times why their house was broken into. Sergeant Brown stated that Robert had a 'warrant for burglary.'

53. Sergeant Brown told Mr. Colter that she personally obtained an arrest warrant for Robert Baker, and a search warrant for the residence. Sergeant Brown told Mr. Colter that she had personally participated in the search. Mr. Colter inquired about the warrant number, the Judge who signed off, and which court the warrant was from. Sergeant Brown would only tell him "Superior Court" and that there was a copy on the counter in the property.

54. Sergeant Brown refused to answer any of the other questions. Mr. Colter asked repeatedly for her name and badge number, but she refused. Mr. Colter asked what they were looking for in the home and Sergeant Brown stated that she could not tell him. Mr. Colter told

Sergeant Brown her story sounded fabricated, prompting Sergeant Brown to say she had to go and then she hung up. Sergeant Brown called back about twenty minutes later and demanded Mr. Colter's name, which he declined to provide. Sergeant Brown disconnected the call again.

55. Multiple subsequent calls to the Vallejo Police Department were not returned.

56. Upon information and belief, to date, there has never been a valid warrant issued for Robert Baker related to the April 14, 2024, incident with Sergeant Brown.

57. To date, it is unclear whether the 'warrant' left inside of 106 Assay Court was issued by a Solano County Superior Judge based on a falsified sworn statement from Defendant Sergeant Jodi Brown; or if the warrant itself was wholly fabricated by Defendant Sergeant Jodi Brown and/or yet-to-be-identified DOE City of Vallejo employee(s).

58. When the family was able to locate the specialty drill bit necessary to gain entry into the house, they discovered all of their boxes of ready to move personal belongings and loose items were broken, missing or damaged. Every box and container in the house were turned onto the ground, smashed and destroyed, every mirror broken, everything breakable broken. Even yet to be delivered Christmas gifts were ripped out of their colorful wrapping to be broken and destroyed for no reason other than revenge and malice.

59. Every room and inch of the house was 'searched' with the specific intent to cause catastrophic damage to the occupants' personal belongings, despite Vallejo Police Officers having no idea who even lived there, a wholly unlawful search and malicious act of retaliatory vandalism perpetrated by Vallejo Police Officers, a testament to the power of Sergeant Brown's lawlessness and absolute, abject lack of supervisory control by the City of Vallejo.

60. On the counter was the 'search warrant', a document wherein the only item listed for

was Defendant Sergeant Jodi Brown's inscribed 14k gold-plated handcuffs, handcuffs she lost while racially profiling and trying to illegally detain Mr. Baker, who she had no cause to contact, identify, or handcuff.

61. Upon information and belief, Jodi Brown was promoted to Lieutenant following the subject incident to reward her commitment to the Vallejo Police Department's long history of engaging in racism and unconstitutional retaliatory conduct.

62. On May 3, 2024, at approximately 2:30 p.m., a yet-to-be-identified DOE Vallejo Police Officer saw Mr. Baker on Tuolumne Street, near Vallejo High School, and got behind him in a patrol car. The Officer then intentionally, vindictively, and violently swerved his patrol car directly towards Mr. Baker's motorbike. Mr. Baker swerved to avoid being run over and killed, crashing in the process.

63. As a result of the Officer trying to hit and/or run Mr. Baker off the road, he crashed and broke his leg and totaled the bike.

64. The DOE Defendant Vallejo Police Officer who ran Mr. Baker off the road collected his information for a police report. Mr. Baker was not cited, detained, or arrested related to this or the April 14, 2024, incident, and the officers did not find a warrant when they checked his name.

65. Mr. Baker was transported to the hospital by ambulance and required surgical restoration of his severely broken leg.

66. On May 18, 2024, Mr. Jamal Colter, Ms. Kellyanne Colter, and their minor children were pulled over in San Francisco and held at gunpoint by multiple San Francisco Police Department Officers (S.F.P.D.) with AR-15 rifles, while driving the vehicle Mr. Baker was in on April 14, 2024.

67. According to S.F.P.D. Officers, Sergeant Jodi Brown and/or yet-to-identified Defendant

DOE Vallejo Police Officer(s) ordered the vehicle to be seized in connection with a 'robbery' and reported the driver was 'armed and dangerous.'

68. Upon information and belief, the vehicle was unlawfully seized in the absence of any pending criminal inquiry or lawful right to seize and maintain possession of it.

69. Upon information and belief, there was absolutely no legitimate legal basis for reporting the vehicle to be occupied by someone 'armed and dangerous' or involved in a 'robbery.' The labeling of the seizure notice purposely and unnecessarily endangered Mr. Baker and his family and sought to limit, conceal and restrict their constitutional protections.

70. Prior to the April 14, 2024, incident, Mr. Baker was unknown to Sergeant Brown and she had no factual basis for alleging the vehicle was involved in a 'robbery', nor that he was 'armed' or 'dangerous' in any way.

71. Mr. Baker did nothing to present himself as armed or dangerous during his encounter with Sergeant Brown, evidenced by Sergeant Brown allowing him to sit in the car with his hands out of her view when she went to ascertain if he had a Driver License, and then allowing him to subsequently drive away unpursued when he would not participate in her wholly unlawful quest.

72. Upon information and belief, Sergeant Brown's actions as described herein were undertaken with the sole unlawful intent to target, harass, racially terrorize and oppress Mr. Baker.

73. Upon information and belief, Sergeant Brown's actions were not the result of ignorance or neglect, but instead a carefully calculated retaliatory scheme stemming from her malice and racial animus, which were inflamed by her embarrassment and anger over ironically losing her personal engraved gold-plated handcuffs while racially profiling and terrorizing an African American community member.

74. Upon inquiring with the Solano County Superior Court, Solano County District Attorneys' Office, and an independent bail bondsman during the weeks this was occurring, there was no warrant for Robert Baker, nor for the residence at 106 Assay Court.

75. Plaintiffs submitted a Cease-and-Desist Demand to the City of Vallejo, along with their Government Tort Claim filing, requesting the Chief of Police order an investigation into the underlying racial profiling incident with Mr. Baker; the use of non-departmental gold plated handcuffs; the legitimacy of the warrant, (and if valid, to determine who authorized such a wild expedition to recover one pair of handcuffs and what false evidence was presented to a Judge to permit such a search of a family home under these circumstances); the intentional destruction of the Colter family's personal property; the assault with a deadly weapon that lead to Mr. Baker's severely broken leg and totaled motor bike; and the circumstances of Mr. Baker's vehicle being seized and labeled 'armed and dangerous.'

76. One year after the subject incident and six months after requesting an Internal Affairs investigation, Plaintiffs have yet to be contacted by the Vallejo Police Department's Professional Standards Division/Internal Affairs.

77. Plaintiffs Jamal and Kellyanne Colter suffered financial loss as a result of Vallejo Police Officers intentionally destroying and seizing their property. Further, Plaintiffs Jamal and Kellyanne Colter continue to live in fear of the Vallejo Police Department's rogue, lawless employees. Plaintiffs Jamal and Kellyanne Colter suffer ongoing emotional distress as a result of the City of Vallejo's refusal to investigate and hold Defendant Sergeant Jodi Brown and Defendant DOE Vallejo Police Officers accountable for this escalating series of unlawful, unconstitutional incidents, which have injured and continue to endanger their son, Robert Baker, and their entire family. Plaintiffs Jamal and Kellyanne Colter's ongoing fear intensified upon

discovering Defendant Sergeant Jodi Brown was promoted to Lieutenant subsequent to this troubling series of events.

78. Plaintiff Robert Baker suffered financial loss as a result of Vallejo Police Officers intentionally destroying and seizing his property.

79. Plaintiff Robert Baker suffered a severely broken leg, which required surgical restoration and causes ongoing pain. Mr. Baker continues to live in fear of additional injury and retaliation at the hands of Defendant Sergeant Jodi Brown and/or DOE Defendant Vallejo Police Officers, which has intensified upon learning that Defendant Jodi Brown was promoted to Lieutenant in 2024, shortly after the Vallejo Police Department became aware of this incident.

80. Plaintiff Robert Baker suffers ongoing emotional distress as a result of the City's refusal to investigate and hold Defendant Sergeant Jodi Brown and Defendant DOE Vallejo Police Officers accountable for these escalating and disturbing incidents, which have permanently injured Mr. Baker and continue to endanger him and his entire family.

81. Plaintiffs have been robbed of their sense of safety and security as American Citizens, who are to be free from unlawful searches, illegal seizures, unwarranted use of force, racial profiling, and racial terror. These multiple, escalating, dangerous incidents were ignored by Chief of Police Jason Ta and the City of Vallejo.

**Monell Historical Allegations**

82. Upon information and belief, Sergeant Jodi Brown has been with the Vallejo Police Department since 2013 and is deeply assimilated into the unconstitutional, racist and violent culture of the Vallejo Police Department, having participated in the Professional Standards

Division/Internal Affairs Division wherein command staff members routinely hid and

whitewashed excessive force, racism, and concealed criminal conduct.

**History of Lawlessness and Intimidation**

83. By early 2019, Counsel Melissa Nold was litigating multiple Monell cases against the

City of Vallejo for incidents going back to 2015 and working with multiple families whose loved

ones were shot, injured or killed by Vallejo Police Department employees.

84. On January 22, 2019, African American U.S. Marine veteran Adrian Burrell was

attacked by Vallejo Police Officer David McLaughlin. Mr. Burrell was standing on the porch of

his home, when Officer McLaughlin approached and assaulted him because he was filming a

traffic stop. Days later, Mr. Burrell's cellphone video went viral, resulting in international media

coverage.

85. Within 24 hours of releasing the footage of the incident, Vallejo Police Department

Internal Affairs Sergeant Drew Ramsay and Lieutenant Steve Cheatham went to Mr. Burrell's

home uninvited. They drove up his street at a high rate of speed in an unmarked City of Vallejo

SUV and came to a loud screeching halt directly in front of Mr. Burrells's house, parking in the

exact same spot and fashion Officer McLaughlin had done just days before when he attacked Mr.

Burrell. They parked on the wrong side of the road, hopped out of the car and aggressively

approached Mr. Burrell.

86. Coincidentally Counsel Melissa Nold was standing outside with Mr. Burrell waiting for

reporters from KTVU news when the Internal Affairs command staff approached. The Sergeant

and Lieutenant appeared very surprised when Counsel Nold introduced herself and asked them

what they wanted, before they could speak to Mr. Burrell.

87. Upon information and belief, Lt. Cheatham and Sgt. Ramsay went to Mr. Burrell's home with the intention of intimidating him, to deter him from filing a grievance, but their efforts were foiled when they realized Mr. Burrell was in the presence of counsel who would not allow them a private audience with Mr. Burrell.

88. Officer McLaughlin would later admit under oath to having his badge bent after an on-duty shooting prior to the incident.

89. On January 31, 2019, Carlos Yescas, a Latino teenager, was brutalized by Vallejo Police Lieutenant and current Vallejo Police Officer Association President Michael Nichelini. The incident was captured on cellphone video. Then San Francsico Chronicle Journalist Otis Taylor wrote an article about the incident wherein counsel Melissa Nold was quoted criticizing the Vallejo Police Department and Lt. Nichelini. Lt. Nichelini would later attempt to intimidate the African American Journalist because of his coverage of the Yescas incident and other incidents related to Vallejo.

90. Counsel Nold filed a claim with the City of Vallejo related to the Yescas incident.

91. Upon information and belief, the City of Vallejo Police Department never opened an Internal Affairs investigation into the incident involving Lt. Nichelini and Carlos Yescas due to the illegal agreement between the Police Chief and the Vallejo Police Officer's Association, which bars the department from investigating citizen complaints of misconduct and excessive force.

92. Days later, on February 9, 2019, six Vallejo Police Officers shot and killed Willie McCoy, firing 55 rounds into his car after he fell asleep in a drive through. The national spotlight was directed back to and would remain focused on Vallejo for the rest of 2019 and 2020. As the

negative media coverage persisted, Counsel Nold handled the majority of press statements related to Vallejo.

93. On April 16, 2019, just a few weeks after McCoy's shooting, McCoy's niece Deyana Jenkins was racially profiled and pulled over by Vallejo Police Officers Jordon Patzer and Colin Eaton, two of the officers who shot and killed McCoy. She was dragged out of her car, tased and sent off to jail with the man who shot her uncle in his sleep.

94. Following the Jenkins incident, Officer Eaton was involved in multiple unlawful uses of force involving people of color, including standing on a man's head, and punching an African American woman in the face multiple times, an incident Attorney General Rob Bonta was publicly concerned about. In traditional Vallejo Police Department fashion, Officer Eaton was promoted to Corporal to reward his history of violent, racist policing.

95. In April 2019, Counsel Nold, while working with the Law Office of John Burris, filed four Tort Claims against the City of Vallejo, related to these and other incidents.

96. In the weeks and months that followed, Counsel Nold began receiving threatening calls, always from the same voice, saying, "bitch we're gonna kill you," and "we're gonna gut you in front of your kids." During the same timeframe, marked Vallejo Police Department patrol SUVS and motorcycles began to follow Counsel.

97. The Vallejo Police Officer's Association began posting social media posts accusing Counsel Nold of being harmful to the community and stating that she brought death threats on herself. Current and former Vallejo Police Department employees began a campaign of harassment of Counsel Nold attempting to deter Counsel from pursuing her client's lawful constitutional claims.

98. On April 24, 2019, multiple families and individuals who had been impacted by police

violence in Vallejo attended a Vallejo City Council meeting to condemn the City of Vallejo Police Department's practices and the recent violence. The families and community members were thrown out of the meeting, and dozens of Vallejo Police Officers filled the council chambers, some in riot gear. Many familiar and notorious Vallejo Police Department faces filled the chamber room, including Internal Affairs Lieutenant Steve Cheatham, who was slapping a billy club on the palm of his hand over and over. The billy club appeared to be an antique with a large amount of the paint missing from having struck so many people in the past. The families were shocked to discover the Internal Affairs Lieutenant, who was supposed to be investigating their complaints, was the same person making unlawful displays of force as they attempted to exercise their rights to protest the brutality, they and/or their loved ones suffered.

99. The racial terror tactics of the Vallejo Police Department that night raised the specter of the Deep South in the 1960's, instilling fear in the men, women, elders and children who came to protest racism and violence in Vallejo. Many community members openly expressed fear of returning to Vallejo City Council meetings after that.

100.     In addition to unlawful displays of force by the Internal Affairs Lieutenant, and other members of the command staff, families were also facing the actual officers who abused them or killed their loved ones, with the officers smirking and attempting to antagonize grieving mothers.

101.     In mid-2019, Vallejo Police Department Captain John Whitney exposed a ritual within the Vallejo Police Department wherein members of the Vallejo Police Department gathered with fellow officers to commemorate officer involved shootings by bending the star tip of the badge of officers who were involved in shootings. Whitney reported the troubling 'badge bending' ritual to City Manager Greg Nyhoff, along with the tasing incident involving Deyana

Jenkins that was flagged as an excessive force incident by the command staff and subsequently covered up by Vallejo Chief of Police Andrew Bidou. (CAED 2:19-cv-01896).

102.    In response to exposing the ritual and unlawful force, Whitney was fired, threatened and terrorized by his Vallejo Police Department coworkers. Captain Whitney sued the City of Vallejo in Solano County Superior Court for Wrongful Termination and settled his case for $900,000.00. (FCS055842)

103.    By mid-2019, City of Vallejo Police Chief Andrew Bidou, City Manager Greg Nyhoff, City Attorney Claudia Quintana, Assistant City Attorney Kelly Trujillo, and Mayor Bob Sampayan were aware of the badge bending practices. All of these relevant department heads were also fiduciaries, and/or licensed professionals with moral and ethical duties to exorcise this abominable and unfathomable badge bending practice. Shockingly, no investigation was ordered or conducted, and no semblance of an investigation would occur until after the media exposed the ritual a year later.

104.    In mid-2019, Police Chief Andrew Bidou resigned. Despite his inaction related to the badge bending and ongoing mismanagement of the Police Department, the City of Vallejo publicly honored Chief Bidou upon his alleged 'resignation.'

105.    On September 24, 2019, Counsel Melissa Nold attended a Vallejo City Council meeting. During the meeting, Counsel was notified that Vallejo Police Lieutenant Michael Nichelini was covertly filming her with his cellphone and taking photos of her. At the time of the surveillance, Counsel Nold was quietly standing in the back of the room. Multiple bystanders/media members photographed Lt. Nichelini filming counsel. When Counsel finally saw Lt. Nichelini after being secretly filmed for 15 minutes, he was leering at her and smirking.

106.    On October 4, 2019, Counsel Melissa Nold sent a cease-and-desist letter to

Vallejo City Attorney Claudia Quintana, demanding City of Vallejo employees immediately cease unlawfully surveilling, harassing, and attempting to intimidate her when they see her in the community, on social media posts, etc. Attorney Quintana told Counsel Nold to report the behavior to the Vallejo Police Department, despite knowing that at least one of the people known to be responsible for the harassment was a Lieutenant in the department, who happened to also be the Police Association President, and the nepotism hire of the son of the former Chief of Police.

107.    Shortly thereafter, City Attorney Claudia Quintana abruptly resigned from the City of Vallejo.

108.    In November 2019, Counsel Nold was standing in front of Vallejo City Hall with Community members ahead of a City Council meeting. Lt. Michael Nichelini arrived and saw Counsel Nold. He immediately began aggressively walking at her, with a scowl. Lt. Nichelini appeared that he was going to engage her in a physical confrontation, but at the last moment he veered slightly off his path, brushing past her shoulder. Counsel Nold filed another formal complaint against Lt. Nichelini and demanded that the City of Vallejo bring its rabid employees to heel.

109.    In early 2020, the new Police Chief Shawny Williams ordered an Internal Affairs investigation into Counsel Nold's two complaints. The first complaint resulted in an interview by then Internal Affairs staff, now Deputy Chief Bob Knight and now Captain Sanjay Ramrakha. Chief Williams sustained Counsel Nold's first complaint and took disciplinary action against Lt. Nichelini. No second interview was conducted related to the escalating second incident because Counsel Nold's email address was blocked by Captain Ramrakha.

110.    In addition to menacing Counsel Nold for attempting to vindicate her client's

constitutional rights, Vallejo Police Department employees have also harassed and threatened other critics, including former Vallejo Chief of Police Shawny Williams; Vallejo Police Deputy Chief Joseph Gomez; Vallejo Police Captain John Whitney; former City Council Member Stephanie Gomes; esteemed Attorney Dan Russo, Journalist Otis Taylor, and the families of Jared Huey, Mario Romero, Willie McCoy, Angel Ramos, all who suffered threats and harassment after members of the Vallejo Police Department shot and killed their loved ones. These are just the victims personally known to Counsel Nold.

111.    Upon information and belief, Lt. Michael Nichelini was hired by the City of Vallejo when his father, Robert Nichelini, was the Vallejo Chief of Police.  The City of Vallejo hired Michael Nichelini with knowledge that he had multiple findings of excessive force by the Oakland Police Oversight Board in the year before the City of Vallejo hired him.  The City of Vallejo is no stranger to nepotism, having multiple sets of relatives working together in the Vallejo Police Department.

112.    In 2020 Assistant City Attorney Kelly Trujillo resigned from the City of Vallejo.

113.    In January 2020, then Sgt. and now Lt. Steve Darden left comments on Counsel Nold's personal Facebook page and engaged in communications with Counsel on the same post, alleging to know a damaging secret about Counsel, while naming her former law enforcement employer.

**Badge Bending**

114.    In July 2020, the news organization *Open Vallejo* published a shocking report

revealing Vallejo Police Officers engaged in badge bending rituals. The news group was the first to alert the public of this unethical grotesque practice that had been going on for many years behind closed doors.

115.    Courtroom testimony in Solano County Superior Court in <u>People v. Milano</u> (VCR233208) revealed that members of the Vallejo Police command staff and other department members bent the star tips of subordinate officers who had been involved in officer involved shootings. Former Vallejo Police Officer Joshua Coleman testified that Vallejo Police Lt. Kent Tribble got angry at him when he shot a suspect before Tribble could shoot the man, causing Tribble to angrily accuse Officer Coleman of stealing his dinner, a comment which demonstrated how comfortable the Vallejo Police Department command staff was with expressing their blood lust and discussing their ritualized culture of violence.

116.    Captain Sanjay Ramrakha and other command staff members were implicated in the public badge bending testimony; nevertheless, Ramrakha continued to move up the food chain and ended up working to reform the City's use of force policy.

117.    Upon information and belief, the City of Vallejo knowingly failed to conduct a timely investigation into the badge bending rituals, to ensure the Statute of Limitations for disciplinary actions ran out and none of their employees could be disciplined.

118.    Some of the badge bending supervisors were responsible for later evaluating the same Officer involved shootings they were commemorating with a badge bend.

119.    Upon information and belief, one or more of Defendant Brown and/or Defendant DOE Vallejo Police Officers' Field Training Officers engaged in badge bending practices and/or had multiple incidents of unwarranted police misconduct, including excessive force and/or racism in their histories.

120.      Thereafter, the City of Vallejo confirmed the existence of the badge bending, which it had concealed from multiple civil Plaintiffs for more than a year, despite knowing that at least two confirmed badge bending officers were Defendants in three separate wrongful death civil rights cases involving African American and Latino men where badge bending occurred (Estate of Willie McCoy et al.; Estate of Ronell Foster, et al.; and Evans v. City of Vallejo) The Foster case settled pre-trial, before the concealed badge bending evidence was leaked, having never been disclosed to Plaintiffs' counsel.

121.      Whistleblower Captain Whitney has testified under oath regarding unconstitutional policies and unconstitutional practices at the highest levels of the Vallejo Police Department and City of Vallejo and the department's unconstitutional and state law violative refusal to hold officers accountable for excessive force and misconduct.

122.      Upon information and belief, the City of Vallejo failed to investigate when they discovered that Captain Whitney was threatened and harassed by named Vallejo Police Department employees for exposing their unlawful conduct.

123.      More than a year after discovering the badge bending practices and only after the practice was exposed by the media and resulted in public outcry, the City of Vallejo hired retired Deputy Sheriff Rob Giordano to 'investigate' the badge bending and issue a report.

124.      The City of Vallejo continues to conceal the badge bending report.

125.      Solano County Superior Court Judge Daniel Healy read the badge bending report in its entirety in the Milano case and refers to the report as having 'no value', indicating that the City of Vallejo's investigation was never intended to shed light on the badge bending practice.

126.      Upon information and belief, the City of Vallejo took no meaningful action in

relationship to the badge bending, made no meaningful efforts to investigate the ritual, and made no effort to deter its practice in the future, despite its existence being confirmed by numerous current and former members of the Vallejo Police Department under oath.

127.    Upon information and belief, to date, the City of Vallejo fails to maintain a policy explicitly prohibiting the practice of badge bending and similar activity, despite knowing the practices prevailed for many years and under many former Chiefs of Police, and despite prior attempts to stop the practice.

128.    Plaintiffs are informed, believe and herein allege, the City of Vallejo Police Department rewarded and/or encouraged excessive force by providing officers with 'Manny Awards' at staff briefings subsequent to controversial officer involved shootings and other concerning incidents, while some of those incidents were still under investigation by the Vallejo Police Department, Solano County District Attorney's Office, and/or the Department of Justice.

**Ongoing Racism and Refusal to Reform**

129.    In 1946, the City of Vallejo hired its first African American Police Officer, Alfred Robinson. Officer Robinson would be forced out of this role just two weeks later, because the City decided they did not want an African American Police Officer.

130.    Fast forward to late 2019, when the City of Vallejo hired its first African American Police Chief, Shawny Williams. Chief Williams' historical hiring was well received within the community, but the Vallejo Police Department's reception of Chief Williams was a whole different story.

131.    Plaintiffs are informed, believe and herein allege, as soon as Chief Williams

began implementing reform within the police department he faced tremendous backlash from the Vallejo Police Department command staff and some of the patrol officers, not only due to his reform efforts and holding officers accountable, but because he was African American in a police department and city with a long history of deeply ingrained, overt racism.

132.     Plaintiffs are informed, believe and herein allege, the culture of racism and discrimination within the Vallejo Police Department is so pervasive, prevalent, and corrosive, that not just community members of color, but most, IF NOT ALL, African American members of the Vallejo Police Department (both sworn and civilian) have been subjected to racial discrimination while employed by the City of Vallejo.

133.     Upon information and belief, the racism is no prevalent at the Vallejo Police Department that multiple African American, non-employee consultants have also been subjected to racial terror by City of Vallejo employees, including harassment, threats, and doxxing.

134.     In November 2019, African American Vallejo Police Detective Jason Scott filed a formal complaint against Vallejo PD Sergeant Matt Mustard, after Scott was repeatedly racially harassed and called 'boy' and other racially disparaging comments by his supervisor Mustard. Additional African American employees have filed formal grievance related to the City of Vallejo Police Department overt anti-Black racism and discrimination of other protected classes.

135.     Upon information and belief, Vallejo City Attorney Veronia Nebb prevented Chief Willliams from implementing any meaningful disciplinary action against Sergeant Mustard for using a clear and overt racial slur, a terminable offense. Detective Scott left the department shortly thereafter when the abuse and racism did not cease.

136.     Upon information and belief, instead of implementing lawful disciplinary actions

chosen by Chief Williams, City Attorney Nebb negotiated with attorneys from the Vallejo Police

Officer's Association to reduce or eliminate disciplinary outcomes, contravening the will and

autonomy of the Chief of Police and bypassing state laws requiring the disclosure of racial bias.

Further, the City Attorney's Office intentionally interfered with the terminations of problematic

employees, at the will of the Vallejo Police Officer's Association and in hopes of eliminating

liability related to negative disciplinary findings, at the expense of the community's safety.

137.    Upon information and belief, Sergeant Mustard voluntarily resigned from the City

of Vallejo in December 2024, after spending years of taxpayer dollars of paid leave, despite his

history of disturbing and clearly terminable conduct, like overt racism and destroying records

related to officer involved shootings.

138.    Plaintiffs further allege, Chief Williams was subjected to racial animus from

command staff members the moment he stepped through the door, being referred to a "Black

Jesus" and racially mocked in various ways.

139.    In September 2020, Detective Sgt. Robert Greenberg was investigated for using

the Term "Black Jesus" in reference to Chief Williams and was found in violation of Vallejo

Police Department Policies for "Use of Indecent and Derogatory Language" and "Conduct

Unbecoming a Police Officer." Detective Greenberg left the Vallejo Police Department

thereafter, to work for the Solano County District Attorney's Office.

140.    In mid-2020, the California Department of Justice entered into a 3-year informal

"Cooperative Agreement" with the Vallejo Police Department, related to its long history of

racism and excessive force, after years of shocking and high-profile police killings and protests.

At that time, the City of Vallejo City Manager Greg Nyhoff sought assistance from the

Department of Justice.

141.     Upon information and belief, the City of Vallejo has intentionally hidden, omitted and concealed significant, material evidence from the California Department of Justice to avoid necessary external court supervision.

142.     Upon information and belief, the day Chief Williams separated from the City of Vallejo, the City of Vallejo also terminated the two African American recruiters, Ron Tabron and Tim Jackson, who were hired to modernize and legalize the City's hiring practices, the individuals who exposed the shocking, discriminatory and dangerous hiring deficiencies.

143.     Upon information and belief, of the approximately 44 qualified Vallejo Police Officers hired while Chief Williams was in command, more than 40 have left the City of Vallejo and retained employment elsewhere.

144.     In October 2023, the California Attorney's General's Office entered into a Stipulated Agreement with the City of Vallejo, which is not currently being supervised by any judge or mediator. Upon information and belief, when the City of Vallejo entered into the non-judicially supervised Stipulated Agreement with the California Attorney General's Office, they failed to report the threats received by Captain Whitney and Chief Williams, the true nature of Williams departure from the City of Vallejo, the discovery of potentially unqualified Vallejo Police Officers they failed to investigate, and the abject defects in their Internal Affairs process from end to end.

**Profound Recruitment and Hiring Deficiencies**

145.     Upon information and belief, in early 2020, Chief Williams hired his own recruiting staff, Ron Tabron and Tim Jackson, both career law enforcement officers. The Vallejo Police Department was predominantly White until 2020, despite being one of the most racially

diverse cities in the country. Plaintiffs further allege, Mr. Tabron and Jackson got tremendous

backlash from the command staff as they attempted to ascertain how the Vallejo Police

Department had been conducting its hiring.

146.    Upon information and belief, Chief Williams discovered the City of Vallejo

Police Department had been engaging in unlawful hiring practices, summarily omitting people of

color, women and the LGBT community from applying to work as Vallejo Police Officers and

focusing on hiring 'warriors' and 'cowboys.'

147.    Upon information and belief, Chief Williams discovered the department had been

conducting its own hiring, entirely outside of supervision of the Human Resources Department

and in a manner prohibited by state law.

148.    Upon information and belief, Chief Williams' recruitment efforts were heavily

thwarted by senior members of the command staff, including current high-ranking members of

the department such as current Deputy Chief Bob Knight, and former Sgt. Jared Jaksch, who

wanted to maintain full and exclusive control of the recruitment process, which included the

ability to hire officers who did not meet P.O.S.T. minimum requirements for employment as

sworn police officers, effectively hiring whoever they wanted who aligned with their

unconstitutional policing culture, hiring being conducted completely outside of the oversight of

the Human Resources Department, hiring officers who did not meet minimum qualification, and

hiring outside of compliance with state and federal law.

149.    Chief Williams had Mr. Tabron conduct a formal Assessment of the recruiting

process, which resulted in a written report which outlined the 25 shortcomings in the City's

recruitment and hiring practices, some more disturbing than others, including:

1.  **No Standardized Recruitment Guidelines**
2.  **No Standardized Disqualification List**

3.  Job Classification inaccurate, confusing, and misleading
4.  **No defined Passing Score for the Recruit Written and Physical Agility Test**.
5.  No clearly defined Step by Step Explanation of the testing process, application procedures for recruits.
6.  No dedicated Recruitment Webpage
7.  Poor coordination with Human Resources
8.  Lack of consistent and effective communication with the Human Resource Department on a weekly basis
9.  Outdated Flyers
10. No Recruitment Activity Plan
11. No Online Presence
12. Lack of Branding
13. **Sergeant performing clerical duties, checking applications, scheduling panel interviews, checking minimum qualifications**
14. Community and Human Resources not included in the Interview Panels
15. Interview Panels consisted of Sworn Personnel only, Human Resource Representatives and Community members were not included.
16. **Potential exposure to EEOC discrimination complaints (Equal Employment Opportunity Commission) due to lack of consistency in recruitment process**.
17. Oral Interview Panel interview orientation and training not thorough.
18. No NTN, National Testing Network assessment for Police Recruits.
19. Honorably discharged Veterans can substitute 3-years of service for the education requirement to meet minimum qualifications recommended
20. Sergeant Training 40 Hour Background Course
21. No Strong presence of College Campus
22. No Outreach to Criminal Justice Programs
23. No Outreach to Men and Women's Athletic Programs
24. No robust partnership with Regional Police Academies for recruitment.
25. The Department lacks a robust/comprehensive Recruitment and Hiring Process

150.    Upon information and belief, the City of Vallejo failed to report to the P.O.S.T. Commission when they discovered the profound deficiencies in their recruitment and hiring practices, including failure to maintain records in accordance with P.O.S.T. requirements and potentially unqualified Vallejo Police Officers patrolling the community.

**City Attorney's Office's Malfeasance**

151.    The Vallejo City Attorney's Office was found in violation of the California Public

Records Act for unlawfully destroying records related to officer involved shooting incidents and refusing to turn over records for over four years, records that were subject to release. A 2023 Solano Superior Court case brought by media outlet, *Open Vallejo,* revealed that in 2021 Assistant City Attorney Kately Knight was contacted by former Vallejo Police Officer Association President and Vallejo Police Sergeant Matthew Mustard via email. Mustard was seeking permission to destroy records of several shooting and use of force incidents he investigated. Attorney Knight authorized the destruction of those records, despite multiple preservations of evidence, pending media requests, and a pending California Department of Justice investigation ongoing.

152.    At the time Attorney Knight authorized the destruction of evidence, the City of Vallejo had multiple preservation of evidence requirements related to multiple pending *Monell* cases.

153.    At the time Attorney Knight authorized the destruction of evidence, there was a pending Department of Justice investigation related to use of force.

154.    Upon information and belief, Sergeant Mustard was on leave at the time he requested to destroy records of cases he investigated or participated in.

155.    Upon information and belief, Katelyn Knight is still employed with the City of Vallejo and faced no significant disciplinary actions related to her knowing and intentional destruction of evidence and being found in violation of the law.

156.    In 2024, Counsel Nold discovered the City of Vallejo Police Department maintains a previously undisclosed database of Internal Affairs incidents based on Tort Claims and Citizen Complaints, the majority of which have been withheld from Plaintiffs and Defendants for years.

157.    Further, Counsel shockingly discovered that the City of Vallejo had been concealing discovery for nearly a decade. For 10 years, Counsel has engaged in Section 1983 litigation with the City of Vallejo, related to police misconduct and excessive force with *Monell* claims. In each case, Plaintiffs requested ALL CLAIMS related to uses of force, racism, and other misconduct. In every case, the City of Vallejo disclosed only the small sampling of Claims, over and over, but failed to disclose upwards of 200 claims and complaints from people alleging misconduct and excessive force against City of Vallejo Police Department employees, including command staff members. Many command staff member names were intentionally omitted from the records.

158.    In 2024, counsel further discovered former Assistant Vallejo City Attorney Kelly Trujillo unlawfully ordered the destruction of records in mid-2019, documents which were subject to preservation of evidence in multiple pending *Monell*/Excessive Force cases. Trujillo ordered this action soon after the badge bending was **first** brought to her attention.

159.    In October 2024, the current Vallejo City Manager, Andrew Murray, referred to the badge bending rituals as 'allegations' in a media interview, despite multiple Vallejo Police Officers testifying under oath about their personal knowledge and involvement in the practice which spanned years, discounting this grotesque practice.

160.    From 2022-2024, City Attorney Nebb allowed the Police Commission to stall in meet and confer with the Vallejo Police Officer's Association. After the unreasonably long two-year delay, City Attorney Nebb presented an inexplicable Police Commission Amendment to the City Council in March 2025. The City Attorney's Office negotiated the Amendment with the Vallejo Police Officer's Association and recommended the City Council vote for it. The proposal

would have crippled the Police Commission's authority and increased potential liability for the City.

161.    The amendment, negotiated and approved by the same City Attorney's Office that has been engaging in and concealing misconduct for years, would have altered the original intent of the Police Commission and rendered it completely toothless, making the Commission's "Recommendations" merely 'Opinions."

162.    On March 4, 2025, The Vallejo City Council unanimously rejected the outlandish proposal to effectively dismember the Police Commission before it even starts.

163.    On March 4, 2025, Commission Mike Nisperos resigned from the Police Commission. Mr. Nisperos is a former California State Bar Prosecutor and has been involved in police reform efforts since he helped found the Oakland Police Commission in 2017. Mr. Nisperos spent years advocating for police reform in Vallejo, including drafting a proposed Consent Decree outlining the multiple areas of concern regarding the Vallejo Police Department.

164.    After his resignation, Nisperos told local media outlet *Open Vallejo*, "I'm not withdrawing from participating or being engaged, it's just that I'm not going to participate in something that's turning out to be a folly.'

**Fighting Reform and the Ongoing Pattern of Concealing Misconduct**

165.    In mid-December 2021, the City of Vallejo contracted with Truleo, at the direction of Chief Williams. Truleo is a company that conducts auditing of police body cameras to help assist in police reform and staff monitoring.

166.    In early-mid 2022, Truleo performed some preliminary audits for the City of

Vallejo. During their audit, Truleo discovered potentially unprofessional conduct and reported it to Chief Williams, recommending a more intensive review. Chief Williams reported this information to the staff, and they were upset with him for having a body camera audit conducted, which contravened the longstanding Chief's agreement with the Police Officer Association to not investigate misconduct.

167.    By July 2022, the Vallejo Police Officers Association issued a vote of no confidence against Chief Williams, hoping to force him out of his role as Police Chief.

168.    Shortly thereafter, Vallejo City Manager Malone, the sole individual responsible for hiring and firing the Police Chief, issued a Press Release in support of Chief Williams and his reform work.

169.    In October 2022, Police Chief Shawny Williams, unwilling to voluntarily step down as Chief, began receiving verbal and written threats, for the purpose of instilling historical racial terror into the City of Vallejo's first African American Police Chief and first Police Chief to attempt to reform the rouge Vallejo Police Department.

170.    In November 2022, the City of Vallejo unexpectedly announced Chief Williams 'resignation' with no explanation. The City of Vallejo paid him $408,000 to 'resign' (the equivalent to 18-months' salary) and included a 2-year Non-Disparagement Agreement as part of his separation agreement.

171.    Upon information and belief, the City of Vallejo demanded Chief Williams sign the Non-Disparagement Agreement to prevent him from disclosing the threats and racism he faced as the City of Vallejo's first African American Police Chief and other systemic failures lending to the City of Vallejo's unconstitutional state of affairs.

172.    Upon information and belief, Chief Shawny Williams resigned out of fear for the

safety of his family as the result of receiving threats; thereafter, the City of Vallejo intentionally concealed this information from the public, outside law enforcement agencies, P.O.S.T., the California Department of Justice, and the Federal Bureau of Investigations.

173.     Upon information and belief, to date, the City of Vallejo has not disclosed to the California Department of Justice that Chief Shawny Williams was racially harassed and threatened by City of Vallejo employees, resulting in his sudden departure from the City of Vallejo.

174.     Upon information and belief, Plaintiffs allege City Attorney Veronica Nebb and City Manager Mike Malone both had knowledge of the racial terror and threats experienced by Chief Shawny Williams, both failed to order an investigation into the source of the written and telephonic threats and harassment, and thereafter publicly denied Chief Williams was threatened and ran out of town in fear of actual imminent harm.

175.     Instead of investigating the years long pattern of racism and harassment Chief Williams experienced so they could uproot the unrepentant racists in the Police Officer Association, the City of Vallejo instead protected criminals and compelled Chief Williams to resign and sign a two-year Non-Disparagement Agreement, so the City of Vallejo could deny that the Vallejo Police Officer's Association forced Chief Williams to leave in fear and that the City of Vallejo failed to keep Chief Williams safe. Chief Shawny Williams Non-Disparagement Agreement expired in November 2024.

176.     Upon information and belief, Plaintiffs further allege, the City of Vallejo failed to preserve evidence related to the racial terror and harassment Chief Williams suffered.

177.     Immediately after Chief Williams 'resigned', the City of Vallejo terminated Mr.

Tabron and Mr. Jackson, the team that discovered the City's unlawful hiring practices; and cancelled the contract with Truleo for body camera auditing which discovered misconduct.

178.    Upon information and belief, the City of Vallejo did not replace Truleo and to date has not conducted any additional auditing to detect officer misconduct or to discover the misconduct detected by Truleo.

179.    Deputy Chief Ta was named Interim Chief. Soon after, Vallejo Police Officers reported to one or more very prominent community members that they had effectively been let off the leash. Deadly chases and incidents of frivolous excessive force and abuse increased almost immediately.

180.    In June 2023, Deputy Chief Joseph Gomez was hired by the City of Vallejo. As one of his duties, Deputy Chief Gomez was responsible for reviewing Internal Affairs processes, which were backlogged. According to his Complaint filed in Solano County Superior Court, Deputy Chief Gomez reviewed documents and was concerned about delays in conducting and/or completing investigations, which must be resolved within one year, and other significant issues with the Internal Affairs processes. Deputy Chief Gomez reported his critical concerns about the Internal Affairs issues.

181.    According to his Complaint, Deputy Chief Gomez made decisions related to pending disciplinary matters to avoid missing the Statute of Limitations and was met with significant resistance from employees.

182.    Upon information and belief, the City of Vallejo Police Department routinely misses Statute of Limitations related to disciplinary issues and uses these self-imposed delays to excuse their lack of disciplinary action; while in fact, the failure to timely investigate and make disciplinary decisions are through no act of neglect, but instead a longstanding, calculated and

orchestrated pattern of concealing, failing to document and investigate claims and complaints, in violation of state and federal law.

183.    According to Gomez Complaint, Interim Chief Ta refused to hold Lt. Michael Nichelini accountable for his ongoing misconduct.

184.    Deputy Chief Gomez's Complaint further alleges that an unnamed Vallejo Police Captain, who was vying for his position, began stalking Deputy Chief Gomez. Upon information and belief, the City of Vallejo never investigated the threatening and unlawful behavior directed at Deputy Chief Gomez.

185.    By March 2023, Deputy Chief Gomez was placed on leave for no lawful reason and was offered $100,000 to resign. Deputy Chief Gomez refused the offer. Upon information and belief, Deputy Chief Gomez's $100,000 would have required him to sign a Non-Disparagement Agreement, effectively buying his silence about the Internal Affairs issues the City of Vallejo had been concealing since at least 2012, an agreement similar to the one Chief Shawny Williams signed in 2022.

186.    Upon information and belief, the only City of Vallejo employee authorized to make a payment for $100,000 to Deputy Chief Gomez without City Council knowledge and approval was Vallejo City Manager Mike Malone.

187.    Captain Bob Knight was promoted to Deputy Chief alongside Deputy Chief Gomez, as they were attempting to force Deputy Chief Gomez to quit.

188.    City of Vallejo fired Deputy Chief Gomez when he would not take the money and leave carrying their secrets. In his Complaint, Deputy Chief Gomez alleges he was blackballed by Vallejo Police Department and cannot obtain work in law enforcement.

189.    In 2024, Counsel Nold personally laid eyes on direct evidence that past and

current Vallejo Police Department Professional Standards Division/Internal Affairs Division command staff members, including current Deputy Chief Bob Knight, Captain Sanjay Ramrahka, former Vallejo Police Captain Jason Potts, and other past and present high-ranking members of the Vallejo Police Department, have omitted significant material evidence of police misconduct, omitted significant victim injuries, and omitted evidence and reports of excessive force from the City's Internal Affairs software system, a system that summarizes and chronicles Government Tort Claims and Citizen Complaints for management review and posterity. Omissions include but are not limited to: failure to include complaints received; failure to identify Officers accused of misconduct; failure to identify victims alleging excessive force; failure to identify command staff members who have received claims and complaints; failure to include material information; failure to identify officers engaged in fatal and non-fatal shooting incidents; and failing to mention that unarmed, non-combative Claimants undisputably suffered significant catastrophic permanent injuries and multiple broken bones as a result of Vallejo Police Officers attacks.

190.     According to their own statistics, in 2022, the last year Chief Williams was in command, the use of force had dropped to a record low of 38 uses of force. After Interim Chief Ta's first year in command, the uses of force skyrocketed, increasing fivefold.

191.     In 2024, after more than a year of having no permanent Police Chief, the City of Vallejo finally began interviewing candidates to replace Chief Williams. A series of highly qualified applicants were interviewed; however, on December 31, 2024, the Vallejo Police Officer Association's number one choice, Jason Ta, was named permanent Chief of Police.

192.     There was loud public dissent related to the potential hiring of Ta as permanent

Chief, due to allegations Ta arrived at a crime scene intoxicated when he was Deputy Chief; concerns about his decisions to erase reform efforts; his clear inability to stand up to the bullies in the Vallejo Police Department; and the marked increase in use of force and deadly police chases on his watch.

193.     Upon information and belief, the City of Vallejo had a historically low number of Citizen's Complaints and Government Tort Claims while Chief Williams was in command, a number that increased markedly when Chief Ta took over and loosened the restrictions on the officers for vehicle pursuits and use of force during arrest.

194.     Despite years of promises and years after entering into a valid contract for police auditing services, the City of Vallejo has no Police Auditor, no electronic body camera auditing, or manual body camera auditing.

195.     More than two years after the Vallejo City Council approved its existence, the Police Commission is not yet up and running.

196.     To date, the Vallejo City Attorney's Office refuses to perform their legal and ethical duties with relationship to harm mitigation and is functions as the criminal defense division of the Vallejo Police Department.

197.     The withholding of hundreds of misconduct complaints from generations of victim plaintiffs and criminal defendants is an uncorrectable and unforgivable act.

198.     Upon information and belief, the City of Vallejo has been aware of the catastrophic unconstitutional deficiencies in their Internal Affairs Division since at least 2012, according to their own despicable records.

**Monell Allegations**

199.     The City of Vallejo and the notorious Vallejo Police Department have a long history of refusing to investigate, chronicle, and disclose hundreds of citizen complaints, tort claims, and abuses of force. This revelation was unknown until just recently, due to the City of Vallejo and the Vallejo Police Department systemically concealing these records from civil plaintiffs and criminal defendants going back decades. This failure to supervise and failure to govern the City of Vallejo, results in the inevitable failure to discipline, remediate, retrain, or remove officers that pose an ongoing risk to the public. By refusing to investigate and hold officers accountable for their excessive force and other policy violations, the Vallejo Police Department ratifies officers' unconstitutional behaviors which continue simply because they go by unchecked and continue to this day. The City's unconstitutional practices make it virtually impossible to rid the department of toxic employees because there are no official findings of misconduct or even accurate reports documenting complaints and use of force incidents. As a result of this decades long practice, violent sociopaths, overt racists, and despicable criminals have elevated to the highest ranks of the Vallejo Police Department and maintain employment with the City of Vallejo despite multiple terminable offenses, each scoundrel scratching the others backs on the way up the totem pole, with the nodding approval of the City Attorney's Office.

200.     Plaintiffs are informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work or visit the City of Vallejo, the CITY and Defendant Ta and many Chiefs gone by, have allowed persons to be abused by its Police Officers, including Defendant Sergeant

Brown and Does 1-25 and/or each of them, individually and/or while acting in concert with one another.

201.    Plaintiffs are informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work or visit the City of Vallejo, the CITY, hired Chief Ta as permanent Police Chief, after a rigorous hiring process involving several qualified candidates, at the urging of the Police Officer's Association, because of his compliance with the City's ongoing unlawful practices and culture of concealing misconduct, including his willingness to force out Deputy Chief Gomez after he discovered scandalous and inflammatory evidence of criminal conduct in the Internal Affairs Bureau, ironically also known as the 'Office of Professional Standards.'

202.    Plaintiffs are informed, believe, and therein allege, Defendant Chief Ta was the final decision maker for the police department regarding discipline, training, supervision and development of constitutional policing at the time of the subject incident. Key to his role as Chief of Police, Chief Ta was the final decision maker with regard to department culture with regard to excessive force and racism, a violent culture which Chief Ta welcomed back into the Vallejo Police Department as moment Chief Williams crossed the bridge out of town.

203.    Plaintiff further alleges Chief Ta cancelled a body camera auditing contract with Truleo, to prevent officer misconduct from being discovered by the CITY and Plaintiffs. By cancelling the auditing, without investigating the concerns and without subsequently replacing it with any form of auditing, Chief Ta ratified the misconduct of Vallejo Police Officers. Instead of advancing the Vallejo Police Department towards constitutional 21st Century policing, Chief Ta bent to the will of the long problematic Police Officers Association to avoid much needed reform

and accountability. Chief Ta's actions assured problematic officers that they no longer being held accountable for their actions as they were under Chief Williams and would once again be protected from exposure for misconduct, in accordance with the department and past Chief's longstanding practice of agreeing to hide and conceal unconstitutional conduct. A department once set sail for reform, has now been dragged back into yesteryear, under Chief Ta's dismal supervision, with his choice to reverse reform and promote known bad actors with histories of engaging in unlawful, unconstitutional and discriminatory practices, while turning a blind eye to the fivefold increase in uses of force under his supervision.

204.    Plaintiffs are informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work or visit the City of Vallejo, the CITY, and Vallejo Police Department has engaged in a longterm pattern of failing and/or refusing to discipline Officers, which is evidence of an official policy, entrenched culture and posture of deliberate indifference toward protecting citizen's rights and the resulting deaths and injuries are a proximate result of the Vallejo Police Department's failure to properly supervise, investigate, discipline and supervise its Officers who engage in excessive force and other misconduct. Instead of being investigated, disciplined and retrained to improve services, officers are given awards, bent badges and methods of ratification for their unconstitutional conduct.

205.    Plaintiffs are further informed, believe and therein allege that as a matter of unofficial policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work or visit the City of Vallejo, the CITY, and the Vallejo Police Department exhibits a pattern and practice of using excessive force against citizens and despite these incidents, none of the Officers are ever found in violation of

department policy, even under the most questionable of circumstances, as a result of the City's failure to investigate, control, supervise, and discpline, which ratifies their unlawful behavior.

206.    Plaintiffs are further informed, believe, and therein allege that in the past 15 years, at least 200 victims have filed formal Citizen Complaints and Government Tort Claims against the City of Vallejo related to the Vallejo Police Department alleging misconduct and/or excessive force. Plaintiffs further allege the City of Vallejo Police Department, including high ranking members of the Vallejo Police Department Deputy Chief Bob Knight, Captain Sanjay Ramrahka, Captain Jason Potts, and others, have, in almost all cases, provided a constitutionally deficient investigation, including but not limited to; intentionally documenting excessive force incidents for posterity in an a void, inaccurate and constitutionally deficient manner; failure to identify officers subjected to complaints; failure to identify victims, including fatal and non-fatal shooting victims; failure to identify command staff members subjected to complaints; failure to include material information; and failure to discipline or retrain officers related to these Citizen Complaints and Claims, no matter how egregious the violation of law or ethics.

207.    Plaintiffs are informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work or visit the City of Vallejo, the CITY, in nearly all circumstances, the Vallejo Police Department City of Vallejo failed to conduct anything more than a cursory review of Tort Claims and Citizen Complaints, most never being investigated whatsoever and some being hidden from the official records altogether, despite having witnesses, medical records, video and surveillance footage and other objective evidence supporting victim allegations. Plaintiffs further allege, the CITY failed to properly investigate allegations of excessive force and cleared officers of use of force related misconduct allegations after only a cursory review of

the Tort Claim filing, despite obvious violations of federal law, state law and department policy, in accordance with the unconstitutional longstanding agreement between the Vallejo Police Officer's Association and past Police Chiefs.

208.    Plaintiffs are further informed, believe and therein allege that as a matter of unofficial policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work, or visit the City of Vallejo, the CITY permits its highest-ranking members of the command staff including, Deputy Chief Bob Knight, Captain Sanjay Ramrahka, Captain Jason Potts, and others, to omit, alter and sanitize official records and complaints of misconduct to prevent disciplinary actions against Vallejo Police Officers and other command staff members.

209.    Upon information and belief, the City of Vallejo uses the IA Pro Internal Affairs software system to document and chronicle the department's investigation of incidents such as Government Tort Claim filings, Citizen Complaints, internal complaints, and uses of force. Vallejo Police Department's Professional Standards Division supervisory command staff are responsible for reviewing the information provided in the Tort Claims and Citizen Complaints to determine if further investigation is needed. Thereafter, a supervisor enters a summary of the allegations and pertinent information into the City of Vallejo's Internal Affairs software system.

210.    However, historically during this process, senior command staff members, including high ranking members of the current command staff including current Deputy Chief Bob Knight, Captain Sanjay Ramrahka, Captain Jason Potts, and others, omitted significant material facts; omitted victim names; omitted officer names; omitted significant evidence of misconduct; failed to document command staff misconduct; omitted significant, permanent victim injuries; omitted significant evidence of misconduct; and mislaid facts in their summaries,

to thwart accountability, thereby sanitizing the official records of allegations of misconduct and unwarranted injuries. Omissions include unarmed nonaggressive victims with significant permanent injuries like multiple shattered bones, complaints of racism, and incidents involving members of the command staff and failure to identify officers involved in fatal and non-fatal shootings.

211.     Upon information and belief, the vast majority of entries in the City of Vallejo Police Department Internal Affairs software system failed to properly document the allegations and/or injuries described in the victim's documented narrative provided in the original Tort Claim or Citizen's Complaint.

212.     Upon information and belief, the vast majority of Internal Affairs investigations conducted by the Vallejo Police Department in the past 15 years wherein victim and witness interviews were conducted and a written report was actually prepared, occurred as the result of the incident being reported by news agencies and/or related to off-duty incidents involving outside law enforcement agencies.

213.     Vallejo Police Department's longterm failure to investigate complaints of misconduct resulted in foreseeable failures to discipline and retrain unsafe Officers, which is evidence of an official policy, entrenched culture and posture of deliberate indifference toward protecting citizen's rights and the resulting deaths and injuries are a proximate result of the Vallejo Police Department's not only failure to properly supervise its Officers but subsequent ratification of their unconstitutional conduct and concealing said evidence.

214.     Plaintiffs are informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work or visit the City of Vallejo, the CITY, in nearly all circumstances, the

Vallejo Police Department failed to recommend retraining or remediation for incidents involving members of the community where clear policy violations occurred.

215.    Plaintiffs further allege, the City of Vallejo has failed to mitigate potential harm by failing to notify Vallejo Police Officers when they been found in violation of Vallejo Police Department policies, procedures and training. Even in the limit circumstances where officers were found deficient in their tactics and use of force in fatal incidents, Vallejo Police Officers have not been notified of deficiencies or retrained to reduce their risk of harming members of the public in the future, which also create officer safety issues.

**Unconstitutional Hiring Deficiencies**

216.    Plaintiffs are further informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work, or visit the City of Vallejo, the CITY, permitted the Vallejo Police Department to fully control hiring without ANY oversight or supervision of the Human Resources Department and to engage in unlawful, discriminatory and dangerous hiring practice, as outlined in the City of Vallejo's own assessment of the recruitment and hiring program. Plaintiffs further allege this practice ushered in the unconstitutional and unlawful hiring of violent and unqualified police officers, some who did not meet the State of California's minimum Police Officer Standards and Training (P.O.S.T.) requirements for employment as sworn police officers. The Vallejo Police Department effectively hired whoever they wanted for years, without the oversight of the Human Resources Department and outside of compliance with state and federal law.

217.    Upon information and belief, despite being made aware of this potential crisis in

2020, the City has made no effort to investigate whether or not all of their sworn police employees have passed background checks and are actually qualified to perform the duties of a police officer in the State of California.

218.    Plaintiffs are further informed, believe and therein allege that as a matter of OFFICIAL and unofficial policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work, or visit the City of Vallejo, the CITY, for many years have allowed the Vallejo Police Department to become permeated by an unconstitutional lawless culture that permits untethered racism, excessive force, and disregard for human life. To that end, the CITY has been constitutionally deficient with regard to Use of Force review. The CITY has failed to properly investigate and discipline/retrain officers who used excessive force.

I.    Failures in the Use of Force review, including but are not limited to:

    a.    Failure to investigate, including failure to interview witnesses, failure to interview victims, failure to collect evidence and failure to review evidence;

    b.    Reviewer/investigators omitting negative officer evidence from review and/or documenting false or inaccurate facts in favor of the officer;

    c.    Reviewer/investigators omitting officer and victims names;

    d.    Reviewer/investigators ignoring objective body camera evidence;

    e.    Reviewer/investigators ignoring contradictions between officer reports/testimony and objective body camera evidence;

II.    Failure to discipline/retrain officers who use excessive force, including but not limited to:

    a.    Unwritten agreement to prevent discipline;

    b.    Insufficient/no discipline;

    c.   Insufficient/no retraining;

    d.   Failure to retrain when officer violates training and policy; and

    e.   Failure to notify officers of policy violations and training failures.

219.    Plaintiffs are further informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work, or visit the City of Vallejo, the CITY fails to properly maintain records in order to conceal training deficiencies, unconstitutional misconduct, and prevent civil liability, which leads to ongoing constitutional deficiencies for failure to supervise, as described below:

1.   <u>Failure to maintain employee Performance Improvement Plans:</u> The City of Vallejo destroys employee Performance Improvement Plans upon the completion of the plan. This official policy operates to conceal known deficiencies from future management teams. The City's policy destroys evidence of the City's knowledge of an ongoing training or safety concern, if the officer ends up being involved in a wrongful death or injury case. Such a policy contributes to the unconstitutional operation of the Vallejo Police Department.

2.   <u>Failure to maintain Personnel Records:</u> The Vallejo Police Department keeps no permanent record chronicling the various shootings and/or use of force and/or disciplinary incidents individual employees are involved in because the City of Vallejo maintains an unconstitutional policy of purging complaints and incidents of force from officers' personnel files after 24 months, preventing successive management teams from discovering officers with long histories of misconduct. Many officers who have participated in multiple questionable shootings and excessive force incidents have

advanced into supervisory positions within the Vallejo Police Department due to the lack of negative personnel material being maintained for only 24 months.

**City Attorney's Office Malfeasance**

220.      Plaintiffs are further informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work, or visit the City of Vallejo, the CITY, by and through its City Attorney's Office, has demonstrated constitutional failures, fundamental ethical failures, gross negligence, professional malpractice, and deliberate indifference when engaged in the following unconstitutional practices: destroying records; concealing evidence; concealing misconduct; concealing felony criminal actions; proving knowingly false and inaccurate information to City Council members and City employees; and advising City employees to destroy evidence, for the purposes of concealing evidence of wrongdoing.

221.      Plaintiffs are informed, believe and therein allege, the City of Vallejo City Attorney's Office has engaged in a long history of unconstitutionally concealing misconduct to limit the City of Vallejo's civil liability. During many prior civil cases involving countless plaintiffs, the City of Vallejo City Attorney's Office failed to disclose the vast majority of applicable claims of excessive force or misconduct from the timeframe requests, upwards of 200, in order to conceal their longstanding pattern of unconstitutionally turning a blind eye to police violence, and to diminish past Plaintiffs *Monell* claims and prohibit Plaintiffs and state agencies from discovered the depths of depravity and corruption that still abound in the City of Vallejo this Complaint is being drafted.

222.      The culture of permitting unfettered negligence and malfeasance at the City

Attorney's Office has foreseeably resulted in lawless police officers emboldened by a complicit City Attorney's Office turning a blind eye to the unconstitutional conduct of members of the Vallejo Police Department for decades.

## DAMAGES

223.    As a consequence of Defendants' violations of Plaintiffs' federal civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment, Plaintiffs were physically, mentally, emotionally, and financially injured and damaged as a proximate result of Defendants' wrongful conduct.

224.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) if they are the prevailing party in this action under 42 U.S.C. §§ 1983 and 1988. Plaintiffs are also entitled to punitive damages under 42. U.S.C. §§ 1983 and 1988.

225.    The conduct of Defendant Police Sergeant BROWN, and Defendant DOE Vallejo Police Officers 1-25 was malicious, wanton, and oppressive.

226.    Plaintiffs are therefore entitled to an award of punitive damages against Defendant Officers BROWN and Defendant DOE Vallejo Police Officers 1-25.

### CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**(Violation of Fourth Amendment—Excessive Force – Seizure 42 U.S.C. Section 1983)**
(PLAINTIFF BAKER against Defendant DOES 1-25)

227.    Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

228.    42 U.S.C. § 1983 provides in part, "Every person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress.".

229.    Plaintiff Baker had a firmly established right under the Fourth Amendment to be free from official infliction of physical abuse, assault, battery, unreasonable search and seizure, and to be free from excessive force being used against him.

230.    Defendant Vallejo Police Officer DOES 1-25's actions, as described herein, resulted in the deprivation of these constitutional rights.

231.    Defendant Vallejo Police Officer DOES 1-25, acting in the performance of their official duties, used excessive force against Plaintiff Baker.

232.    On May 3, 2024, Plaintiff Baker did not pose a threat to Defendant DOE Vallejo Police Officers in any form or fashion when they attempted to strike him with their car, causing him to crash and break his leg, which required surgery. Having neither posed a threat, nor committed a crime, nor been provided a command, the use of any force was unnecessary, unreasonable, excessive and constituted excessive use of force.

233.    Defendant Vallejo Police Officer DOES 1-25, acting under the color of statute, ordinances, regulations, customs, and usages of the State, knew that the use of force in these circumstances was illegal under clearly established law.

234.    The conduct alleged herein caused Plaintiff Robert Baker to be deprived of his civil rights protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury,

emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma,

humiliation, and further damages according to proof at the time of trial.

235.    The conduct alleged herein was done in willful, malicious, intentional, deliberate,

or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Violation of Fourth Amendment—Search and Seizure – 42 U.S.C. Section 1983)
(ALL PLAINTIFFS against Defendants BROWN and DOES 1-25)

236.    Plaintiff hereby re-alleges and incorporates each and every paragraph in this

Complaint as fully set forth here.

237.    42 U.S.C. § 1983 provides in part, "Every person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or

other proper proceeding for redress.".

238.    Plaintiffs had a firmly established right under the Fourth Amendment to be free

unlawful and/or unwarranted searches and seizures.

239.    Defendants BROWN AND Defendant Vallejo Police Officer DOES 1-25's

actions, as described herein, resulted in the deprivation of these constitutional rights.

240.    Defendants BROWN, AND Defendant Vallejo Police Officer DOES 1-25, acting

in the performance of their official duties violated Plaintiffs' Fourth Amendment rights.

241.    On April 17, 2024, Defendants BROWN and Defendant Vallejo Police Officer

DOES 1-25 searched Plaintiffs home it in its entirety, ransacked the home; destroyed Plaintiffs' personal property; and seized Plaintiffs' personal property. At the time of the seizure and search, Defendant BROWN either authorized an unlawful criminal break-in and search without having obtained a valid warrant and thereafter fabricated a warrant to provide Plaintiffs; OR Defendant BROWN obtained a judicially approved and signed warrant based on false information Defendant BROWN provided to a Solano County Superior Court Judge under penalty of perjury to obtain the warrant.

242.    Defendants BROWN and Defendant Vallejo Police Officer DOES 1-25, acting under the color of statute, ordinances, regulations, customs, and usages of the State, knew that the search in these circumstances was illegal under clearly established law.

243.    The conduct alleged herein caused Plaintiffs to be deprived of their civil rights protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Plaintiffs to suffer emotional distress, fear, trauma, humiliation, property loss, and further damages according to proof at the time of trial.

244.    The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiffs' constitutionally protected rights, welfare, and safety.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.


### THIRD CAUSE OF ACTION
**(Fourth Amendment —Unlawful Seizure/Detention/Arrest under 42 U.S.C. § 1983)**
(PLAINTIFF BAKER against Defendants BROWN and DOES 1-25)

245.    Plaintiffs hereby re-allege and incorporate by reference each and every paragraph of this Complaint as fully set forth.

246.    Defendants' above-described conduct violated Plaintiff Baker's rights as provided

for under the Fourth Amendment to the United States to be free from unreasonable searches and seizures because Defendant BROWN lacked reasonable suspicion to detain nor the probable cause necessary to arrest Plaintiff Baker yet sought to handcuff and arrest Plaintiff Baker regardless of the law.

247.    Furthermore, Plaintiff Baker had not committed any crimes in Sergeant Brown's presence, nor did he pose a threat to Defendant BROWN or the public.  Plaintiff Baker did not initiate physical contact with Defendant BROWN and never touched or threatened her.

248.    Defendant BROWN's detention and attempted arrest, described herein, was unlawful because Defendant BROWN initiated and demanded contact with Plaintiff Baker when there was no reasonable suspicion to contact him, no probable cause to arrest him, and he had already declined to identify himself when Sergeant Brown attempted a consensual contact.

249.    Therefore, Defendant BROWN's detention and attempted arrest of Plaintiff Baker was an unlawful seizure that violated training and Plaintiff Baker's constitutional rights under the Fourth Amendment.

250.    As a result of her misconduct, Defendant BROWN is liable for Plaintiff Brown's ongoing emotional distress related to being racially profiled and targeted for harassment.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.


**FOURTH CAUSE OF ACTION**
**(Municipal Liability for Unconstitutional Custom or Policy (*Monell*)—42 U.S.C. § 1983)**
(PLAINTIFFS against Defendants CITY, TA, and DOES 1-25)

251.    Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

252.    Plaintiffs are informed and believe and thereon allege that high-ranking CITY

officials, including Defendant Police Chief Ta, City Attorney Veronica Nebb, City Manager Mike Malone and DOES 1-25, and/or each of them, knew and/or reasonably should have known that Vallejo Police Officers are inadequately trained and historically engage in actions contrary to state law, federal law, and department policy, as described above.

253.    Plaintiffs are informed and believe and thereon allege that high-ranking CITY officials, including Defendant Police Chief Ta, City Attorney Veronica Nebb, City Manager Mike Malone and DOES 1-25, and/or each of them, knew and/or reasonably should have known that Vallejo Police Department's well documented recruitment and hiring deficiencies resulted in the improper pre-employment vetting, hiring and retention of dangerous, unqualified Vallejo Police Officers who historically engage in actions contrary to state law, federal law, and department policy, as described above.

254.    Plaintiffs are informed and believe and thereon allege that high-ranking CITY officials, including Defendant Police Chief Ta, City Attorney Veronica Nebb, City Manager Michael Malone, and DOES 1-25, and/or each of them, knew and/or reasonably should have known that their officers are inadequately supervised and disciplined, including but not limited to: ongoing failure to review Claims and Formal Complaints alleging misconduct; failure to discipline overt misconduct; ongoing culture of racism within the department; the omission of officer misconduct from official records; insufficient retention of records of misconduct and remediation; and misconduct within the command staff, resulting in a lack of discipline and failure to retrain officers that engage in conduct contrary to state law, federal law, and department policy, as described above.

255.    Despite having such notice, Plaintiffs are informed and believe and thereon allege

that Defendants CITY, Defendant Ta, City Attorney Veronica Nebb, City Manager Mike Malone, and DOES 1-25, and/or each of them, failed to investigate, concealed, approved, ratified, condoned, encouraged and/or tacitly authorized the employment of inadequately trained police officers that engage in actions contrary to state law, federal law, and department policy, as described above.

256.     Plaintiffs are informed and believe and thereon allege that high ranking CITY officials, including Defendant Chief Ta, City Attorney Veronica Nebb, City Manager Mike Malone and DOES 1-25, and/or each of them, knew and/or reasonably should have known that supervisory and training staff, up to and including the Chief of Police, failed to adequately supervise, discipline and retrain officers who were blatantly violating state law, federal law and department policy.

257.     Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants CITY, Ta, City Attorney Veronica Nebb, City Manager Mike Malone, and DOES 1-25, and/or each of them, concealed, approved, ratified, condoned, encouraged and/or tacitly authorized the failure to adequately supervise officers. Defendant CITY went so far as to publicly criticize media outlets for broadcasting true and accurate information about incidents of excessive force; concealed hundreds of items of misconduct evidence from the public and plaintiffs; and concealed that Chief Shawny Williams, Deputy Chief Joseph Gomez, and Captain John Whitney were all three threatened and ran out of town for trying to reform the Vallejo Police Department.

258.     Despite having such notice, Defendants Chief Ta, City Attorney Veronica Nebb,

City Manager Mike Malone and DOES 1-25, and/or each of them, publicly and openly deny the existence of any ongoing and systemic violence and/or unlawful conduct perpetrated, orchestrated and covered up by City of Vallejo Police Department staff, and thereby approve, ratify, condone, encourage and/or tacitly authorize unlawful behavior.

259.    The injuries and damages to Plaintiffs as alleged herein were the preventable, foreseeable and proximate result of said inadequate training and/or inadequate supervision of Defendant BROWN and/or DOES 1-25 in his/their capacity as police officers for the CITY, and each of them.

260.    Plaintiffs are informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training and supervision of the Defendant BROWN and/or Defendant Vallejo Police Officer DOES 1-25 in their capacity as police officers for the CITY.

261.    The aforementioned failure to train and/or supervise Defendant BROWN and/or Defendant Vallejo Police Officer DOES 1-25 in their capacity as supervisors and/or police officers for the CITY, and each of them, resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, violations of the First, Fourth and Fourteenth Amendment.

262.    The aforementioned inadequate training and supervision of Defendant BROWN and Defendant Vallejo Police Officer DOES 1-25 resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

    a.    The right to be free from excessive force, as guaranteed by the Fourth Amendment to the United States Constitution;

    b.   The right to be free from unlawful searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution; and

    c.   The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution.

263.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (NEGLIGENCE)
(PLAINTIFFS against Defendants CITY, BROWN and DOES 1-25)

262.     Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

263.     At all times, Defendants owed Plaintiffs a duty to act with reasonable care in executing and enforcing any right, law, or legal obligation.

264.     The general duties of reasonable care and due care owed to Plaintiffs by Defendant BROWN and Defendant Vallejo Police Officer DOES 1-25, include but are not limited to the following specific obligations:

    a.   To refrain from using unreasonable force;

    b.   To refrain from unlawful searches and seizures;

    c.   To refrain from engaging in racial discrimination;

    d.   To refrain from engaging in vandalism and/or destruction of personal property;

    e.   To refrain from performing false detentions and arrests;

    f.   To refrain from abusing the authority granted them by law;

g.    To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and otherwise protected by law;

h.    To refrain from omitting facts from official reports;

i.    To refrain from engaging with fraud upon the courts;

j.    To intervene upon observing unlawful conduct from coworkers.

265.    Defendant BROWN and Defendant Vallejo Police Officer DOES 1-25 breached every one of the aforementioned duties owed to Plaintiffs through their acts and omissions.

266.    Defendant CITY is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal. Gov. Code § 815.2.

267.    As a direct and proximate result of Defendant BROWN and Defendant Vallejo Police Officer DOES 1-25's negligence, Plaintiffs sustained injuries and damages, and against each and every Plaintiff is entitled to relief as set forth herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(Battery – Violation of CALIFORNIA PENAL CODE § 246)**
(PLAINTIFF BAKER against Defendant DOES 1-25)

268.    Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

269.    Yet-to-be-identified Defendant Vallejo Police Officer DOES 1-25, while working as law enforcement employees for Defendant CITY and acting within the course and scope of their duties, intentionally injured Plaintiff Baker without a lawful basis.

270.     At no point did Plaintiff Baker consent to yet-to-be-identified Defendant Vallejo Police Officer DOES 1-25's conduct described herein.

271.     A reasonable person in the same position as Plaintiff Baker would have been injured, terrorized and offended by yet-to-be-identified Defendant Vallejo Police Officer DOES 1-25's conduct described herein.

272.     As a result of the actions of yet-to-be-identified Defendant Vallejo Police Officer DOES 1-25, Plaintiff Baker required surgery and suffered permanent physical injury.

273.     Yet-to-be-identified Defendant Vallejo Police Officer DOES 1-25 did not have legal justification for using a deadly weapon, a vehicle, against Plaintiff Baker. Yet-to-be-identified Defendant Vallejo Police Officer DOES 1-25's use of force while carrying out their duties was an unreasonable use of force.

274.     Defendant CITY is vicariously liable, pursuant to California Government Code § 815.2, for the violation of rights by its employees and agents.

275.     As a direct and proximate result of Defendant Vallejo Police Officer DOES 1-25's battery of Plaintiff Baker, Plaintiff Baker sustained a permanent injury and damages and is entitled to relief as set forth herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth

**SEVENTH CAUSE OF ACTION**
**(Violation of the Bane Act (Cal. Civ. Code § 52.1)**
(PLAINTIFFS against Defendant BROWN and DOES 1-25)

276.     Plaintiffs hereby re-allege and incorporate by reference each and every

paragraph of this Complaint as fully set forth here.

277.    Plaintiffs bring this "Bane Act" claim individually for direct violation of their

rights.

278.    By their conduct described herein, Defendant BROWN and yet-to-be-identified

Defendant Vallejo Police Officer DOES 1-25, acted in concert/conspiracy to violate Plaintiffs'

rights under California Civil Code § 52.1 and the flowing clearly established rights under the

United States Constitution and the California Constitution:

    a.  Plaintiffs' right to be free from unreasonable searches and seizures as secured by

        the Fourth Amendment to the United States Constitution and by Article I., § 13 of

        the California Constitution;

    b.  Plaintiffs' right to be free from the excessive and unreasonable force in the course

        of arrest or detention, as secured by the Fourth Amendment to the United States

        Constitution and by Article I, § 13 of the California Constitution;

279.    Excessive force violates the Fourth Amendment and violates the Bane Act.

Defendants' use of unlawful force against Plaintiff Baker satisfies the "by threat, intimidation, or

coercion" requirement of the Bane Act.

280.    Further, any volitional violation of rights done with reckless disregard for those

rights also satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act.

Defendant BROWN and Vallejo Police Officer DOES 1-25's duties and rights violations were

volitional and intentional acts done with reckless disregard for Plaintiffs' rights; none was

accidental or merely negligent.

281.    Alternatively, Defendant BROWN and Defendant Vallejo Police Officer

DOES 1-25 violated Plaintiffs' rights by conduct constituting threats, intimidation, or coercion that was above and beyond any lawful seizure or use of force.

    a.  Using deliberately reckless and provocative tactics in violation of generally accepted law enforcement training and standards and violation of Plaintiffs' rights;

    b.  Searching and/or seizing Plaintiffs home and property without lawful justification and/or a search warrant;

    c.  Intentionally destroying Plaintiffs property;

    d.  Engaging in racial profiling;

    e.  Engaging in threatening and retaliatory conduct unrelated to any law enforcement purpose;

    f.  Defendants striking and/or physically accosting Plaintiff Baker in the absence of any threat or need for such force;

    g.  Defendants physically accosting Plaintiff Baker by force when he was not suspected of committing any crime;

    h.  Threatening violence against Plaintiff Baker, with the apparent ability to carry out such threats, in violation of Cal. Civ. Code § 52.1;

    i.  Using excessive, unreasonable, and unjustified force against Plaintiff Baker;

    j.  Failing to intervene to stop, prevent, or report the unlawful search, unlawful seizure and use of excessive and unreasonable force by other officers;

    k.  Violating multiple rights of Plaintiffs; and

    l.  Attempting to arrest Plaintiff Baker for no lawful reason;

282.    As a direct and proximate result of Defendants BROWN and Defendant Vallejo

Police Officer DOES 1-25's violation of California Civil Code § 52.1 and Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages against all Defendants and is entitled to relief as set forth herein.

283.    Plaintiffs are entitled to injunctive relief and an award of their reasonable attorneys' fees pursuant to Civil Code § 52.1(h).

284.    Plaintiffs are entitled to damages, including punitive damages against Defendant And all damages allowed by Cal. Civ. Code §§ 52, 52.1 and California law, not limited to costs, attorneys fees, treble damages, and civil penalties.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## JURY DEMAND

Plaintiffs demand a jury trial in this action.

## PRAYER

Wherefore, Plaintiffs pray for relief as follows:

1. Consent Decree commanding Federal Court monitoring of the Vallejo Police Department and the City of Vallejo;

2. For general damages in a sum proven at trial;

3. For special damages, including but not limited to past, present, and/or future wage loss, income, and support, medical expenses, and other special damages in a sum to be determined according to proof;

4. For punitive damages against Defendants BROWN, and Defendant Vallejo Police Officer DOES 1-25 in a sum according to proof;

5. All other damages, penalties, costs, interest, and attorney's fees as allowed by 42 U.S.C. §§ 1983 and 1988, Cal. Civ. Code §§ 52 et seq., 52.1, and as otherwise may be

allowed by California and/or federal law against Defendant CITY and their employees;

6. Any and all permissible statutory damages;

7. For the cost of suit herein incurred; and

8. For such other and further relief as the Court deems proper.

**Date:** May 4, 2024                    Respectfully submitted,

                                         **NOLD LAW**

                                         /s/*Melissa C. Nold*
                                         MELISSA C. NOLD
                                         COUNSEL FOR PLAINTIFFS